John Silk on behalf of Apelli Trapani Construction. Good afternoon, Your Honor. Scott Turner on behalf of National Fire Insurance Company of Hartford. And I'd like to also ask you, we'll start with you, Mr. Lucas, approximately how much time do you need today? Well, if I could have 20 minutes and then time for rebuttal. That's what I would ask for. Sure. Normally, the entire time is 20 minutes. And so most people take 15 and then leave five for rebuttal. But we will be flexible with you. If we're asking you questions, and we're preventing you from arguing, we will usually give you time to finish your thought. Thank you, Your Honor. I'll do my best to keep it 15 and five. Okay. And thank you, Darren, for muting that call. And I, Mr. Silk, Mr. Turner, who wants to go first? Mr. Silk. How much time do you need? Your Honor, I'm going to be doing a portion of Apelli's argument. And then Mr. Turner is going to be doing a second portion of it. We think we'll need approximately 10 minutes and Mr. Turner would think approximately five minutes or so. Sure. Okay. And that's fine. You can have that. And you heard my conversation with Mr. Lucas. So if we are preventing you from arguing, we will give you more time to finish. And with that, I'd like to ask Mr. Lucas, if you can go ahead and get us started. Thank you, Your Honor. Good afternoon, and may it please the court. Tom Lucas for the appellant, West Bend Mutual Insurance Company. This appeal presents three issues for the court's consideration. The first is whether West Bend had a duty to defend the appellees in an underlying construction defect lawsuit based on allegations in the underlying complaint of unit owner personal property damage. The second issue is whether the appellees established that the settlement that they entered into with the underlying plaintiffs was a covered loss under the West Bend policy and therefore triggered the duty to indemnify. And the third issue is whether the judgment that was entered in the appellee's favor against West Bend, which included prejudgment interest, whether prejudgment interest should have been awarded. The appellees, well, actually, Trapani Construction and Village Green, which is National Fire's name insured, were sued in this construction defect lawsuit brought by the Condominium Association of the street of Arlington condominium building. They sought a defense from West Bend as additional insurance under certain commercial general liability policies that West Bend issued to two subcontractors that were working on the project. In the underlying case, the circuit court granted summary judgment to the appellees on the duty to defend and on the duty to indemnify. And in the judgment, the subsequent judgment that was entered, they were awarded prejudgment interest. Those rulings were in error. They're contrary to Illinois law. We are asking this court to reverse the judgment entered for the appellees and enter judgment in favor of West Bend. Mr. Lucas, Mr. Lucas, doesn't the fact that they've alleged damage to personal property, isn't that what Illinois law looks to to determine whether or not there was an allegation in the complaint that required a duty to defend? Well, Your Honor, it is true that the courts focus on the allegations of fact contained in the underlying complaint. And this case, we believe is controlled by the appellate court's opinion in Westfield versus West Bend Buren, where the court there, a construction defect suit, the underlying suit, the coverage action involved a developer seeking a defense as an additional insured under a subcontractor's policy. The underlying complaint in Westfield included claims of unit owner, personal property damage. And the court there addressed whether those claims, the unit owner, personal property damage claims could trigger a duty to defend. And the court looked at the fact that unit owners weren't parties to the underlying complaint that the condo association did not allege that it was bringing their claims in a representative capacity, the unit owner, personal property damage. Isn't that exactly the opposite of what we have here? No, Your Honor. It's exactly what we have here. They do allege that they're bringing the action on behalf of the unit owners. I don't believe they do, Your Honor. I think the original complaints that were filed in this case were only sought damage for common elements damage caused by the water infiltration resulting from the construction defects. And the seventh and eighth amended complaints, the plaintiffs include allegations of personal property damage by the unit owners, but they don't allege that they're bringing those claims in a representative capacity. The complaint only alleges representative capacity in connection with the common elements claims. And the fact is the association doesn't have the authority to pursue those individual claims. The condo act, which is cited, is quoted in the underlying complaints, says the association only has the authority to bring claims for common elements damage or damage involving multiple units. Here, it's repeated in multiple parts of the underlying complaints. The association specifically alleges its representative capacity for the common elements damages, but nowhere does it specifically allege that it is bringing claims in a representative capacity for the individual unit owners. And they don't- It's clear from the complaint that the action, they're alleging allegations on behalf of the unit owners, correct? Well, no, they're alleging that the unit owners suffered personal property damage, but they're not alleging that they, the association, is bringing those claims in a representative capacity because they can't, because they don't have that authority. And that's what, in Westfield, that's what the court found. Well, in Westfield, the court indicated that it wasn't done, but some kind of language, and I can find the exact quote if I need to, but that they weren't making a determination that it couldn't be done, only that it wasn't done in that case. Well, I, your honor, I think that in Westfield, the court specifically noted that the condo act does not give the association the authority to bring unit owner individual claims. Specifically, they said, well, the condo association might have had the capacity to represent the individual unit owners. Nowhere in the complaint did they purport to do so. That's consistent with the fact that they would have the authority to bring claims on behalf of the condo unit owners for common elements damage. That's what the act says. Well, Mr. Lucas, you're actually contradicting yourself, though, because you said earlier that they do, and this is my understanding of the law, that where multiple units are damaged, the association does have a right to bring the claim on behalf of the unit owners. And in this case, well, in this case, it appears that multiple, that they're alleging that multiple units were damaged. So, and you said, you said that just sitting here, that that's the case. Well, your honor, I think if you look, and this was covered in the Seventh Circuit opinion in Metro North, where the court said individual personal property damage claims by unit owners aren't the type of multiple unit claims that the condo association can bring in a representative capacity. Those are individual claims. Well, they can, they can when multiple units are damaged. That's not, well, I'm sorry, your honor, I disagree. And that's not what the Seventh Circuit held, what the Seventh Circuit held. Well, of course, you're a little more concerned with what the Illinois Supreme Court is doing rather than the Seventh Circuit. You do realize that, right? Well, and I don't think the Illinois Supreme Court has specifically spoken on this issue. But when you look at the case law, I think the case law would hold that the condo association doesn't have the authority to bring these individual personal property damage claims. And therefore the allegations, and this is what was what the court in Westfield held, the allegations concerning individual personal property damage claims aren't linked to a party in the suit or a theory being pursued in the underlying case. Therefore, Mr. Lucas also understand that generally the Seventh Circuit will look to this court when interpreting Illinois law, what this court is doing, if there's no decision from the Supreme Court. So when you tell us what the Seventh Circuit has done, it's always been, at least my understanding that where multiple units are damaged, the association does have a right to bring the claim. And you're telling me that you don't think that's the law in Illinois. So maybe you should provide us some case law. Well, I think the Paulette case is kind of the reverse where it considered whether the individual owners could bring a certain claim and the court said, no, you can't bring it. That's a claim that has to be brought by the association. So it's kind of the reverse of what we have here, but your honor, I mean, I'm sorry. I realized the Seventh Circuit is not controlling Illinois law, but the fact is the Seventh Circuit and construing what it believed was Illinois law found that the unit owner individual claims were not claims that the association could bring in a representative capacity. And therefore those allegations couldn't be considered on the duty to defend. And that's what the court in Westfield held. And that's what should have been the result on the duty to defend in this case. And the idea that claims that allegations that are made an underlying complaint, if they're not tied to a theory or a party shouldn't be considered on the duty to defend that's got a longstanding history in the case law in Illinois. And we cited the cases by two minutes versus Newberg and the Diamond State versus Chester Jensen, which arise from the Thompson building, HVAC problems, Crawford labs, ISMI versus Michaelis Jackson, healthcare industry versus moments. All those cases look at bodily injury claims and said, well, the underlying cases didn't involve bodily injury. And Michaelis Jackson and moments matters, of course, specifically said the plaintiffs didn't have the standing to bring those claims. And therefore those allegations of bodily injury. Well, since you're constantly saying that over and over again, Mr. Lucas, I'm going to read to you 765 ILCS 6059.1B, which provides that the board of managers shall have standing and capacity to act in a representative capacity in relation to matters involving the common elements or more than one unit on behalf of unit owners. That's always been my understanding of the law. Well, your honor, I think the law has been interpreted differently. And when you're, when we're talking about individual claims by the owners, the association doesn't have the authority to bring those claims. Let's flip it a little. Let's say that the condo association in this case alleged that two or three unit owners slipped and fell in the lobby because of an effect. Would those allegations trigger a duty to defend when those plaintiffs weren't parties to the condo association lawsuit? And your example doesn't involve any damage to you to the units. That's different. That's that's a personal injury matter. That's not damage to the condo units. But, but I'll let you finish because we obviously don't see the law the same. Okay, your honor. I'll move on to one of the arguments that was was raised on duty to defend is that the the issue of unit owner personal property damage is an issue of standing. And that's what the dissent held in Westfield. But the majority in Westfield pointed out that it's not an issue of standing. It's an issue of whether the allegations that are relied on for the duty to defend are those that are tied to a plaintiff or to a theory of liability in the case. It's more than standing. It's whether the allegations properly trigger the duty to defend. So the issue raised by the dissent in Westfield was was addressed by the majority. And I think you know, the majority was correct. The dissent also cited the J.P. Larson case as support. But in J.P. Larson, the court did say that unit owner property damage claims was a was one of the basis for the finding of duty to defend. But in J.P. Larson, the court didn't address this issue of whether the unit owner claims should be considered. That issue was addressed by the majority in in Westfield. And the court did find that those claims shouldn't be considered on the duty to defend. So when you look at the court's duty to defend ruling, we believe it is contrary to the court's holding in Westfield v. West Van Buren. It's contrary to the 7th Circuit's holding in Westfield v. National Decorative. And it was error. The court's finding a duty to defend. Moving to the duty to indemnify, that's a different analysis from the duty to defend. Because the case law is clear that the duty to indemnify only exists if the insured has settled a covered claim. And if the covered claim is actually covered by the policy. And the outboard Marine opinion states that for the duty to indemnify to exist, both the insurance activity and the resulting loss or damage must be covered. It must actually be covered by the policy. And there are some other rules that I think we all agree on regarding duty to indemnify. One is that the duty to indemnify arises in the context of a settlement. The insured is required to show that there was a reasonable anticipation of liability when the case was settled. The other is, and this is where I think we diverge, is that to show a duty to indemnify, the insured must establish that the loss or damage was actually covered by the policy and was a primary focus of the settlement. And the appellees here do not believe the primary focus test applies to this case. Presumably the circuit court agreed because in its duty to indemnify ruling, it did not mention the primary focus test, but it's clear under the case law that the primary focus test applies to the duty to indemnify. And the appellees in this case did not establish that a primary focus of the settlement was a covered loss. They argue that the primary focus test doesn't apply because the claims and pled in the underlying complaint were covered claims. And they say breach of implied warranty is a covered point. Well, that argument doesn't hold up. It doesn't help national fire. Assuming that they are correct, then the right. Well, what their argument is that a breach of implied warranty claim is a covered claim. And therefore the primary focus test is inapplicable. That's, that's focusing on the label used by the plaintiff in the complaint. And the courts don't focus on the label used by, by the plaintiff to describe his claim. What the court focuses on are the allegations of fact that are allegedly underlying complaint. And in the context of the duty to indemnify the other evidence in the record that is brought forward to determine whether both the activity and the damages that are, were paid as part of the settlement were covered loss. And here the court said the covered loss was the owner's personal property damage claim. But when you look at the evidence that was brought forward on the duty to indemnify, it's clear that they were not a party to the settlement. First, they're not a party to the lawsuit. And second, when you look at the release that was entered into between the language in there about the damage to the unit owners, right? The dwellings. Well, there's language in there about that damage. There's language in there about the condo association releasing their claims, but the condo association doesn't have those claims to release. And they're not a party to the settlement. They didn't sign off on it. They're not an indemnity provision in the settlement agreement by which the association is indemnifying the employees in case the unit owners pursue them further for their own property damage claims. It sounds to me that your client signed a lot of stuff that according to you is irrelevant and shouldn't be in the settlement agreement. I'm sorry, Your Honor. It sounds to me, you are a party to the settlement agreement, right? No, Your Honor. West Bend was not a party to the settlement agreement. Well, I mean, my argument is that, so who are the parties to the settlement agreement under your analysis? Well, the condo association was a party. They are the plaintiff. The Eppley's, I'm sorry, Tapani Construction and National Fire on behalf- The contents of that document contains, are you not? I'm not sure how we're bound by it since we're not a party to it. You're relying on the substance of it in your arguments. Well, the point is the substance of the agreement shows that the settlement was not, did not include a covered loss. And if the settlement doesn't include a covered loss, then the primary focus of the settlement was not a covered loss. I think we're going to hear in a minute or so how that is not the case. Why do you say it's not a covered loss? Well, what I'm saying is, let's assume that the unit- They settled, they settled, right? And they settled the claim and you're claiming that the injurious act was not something covered under the policy. And my question is, why do you say that? What I'm saying, your honor, is the damages that were paid, the settlement amount that was paid were not for a covered loss. They did not- Okay, what loss did they pay for and why do you say that loss was not a covered claim? Well, they paid for, to settle the claim, they paid Trepani 100,000, National Fire 45,000. And they signed the settlement agreement. The point, I think, is that they have to show, in order to establish a duty to indemnify, that they paid a covered loss. And what they failed to show, in the underlying case, was that any of the damages that, or any of the settlement that they paid, went to pay for a unit owner personal property damage claim. Which, if they were properly a part of the case, could be a covered loss. But we argue that they weren't properly in the case on the duty to defend. But on the duty to indemnify, it's their burden to show it. And they didn't show- Show what? Show what? Their settlement included the unit owner personal property damage claim. Okay, so you're saying there's an absence of proof on that issue? Yes, Your Honor. And how would they show that? In a settlement? They could break out the amounts in the settlement. But also, the unit owners would be a party to the settlement. The unit owners were not a party to the settlement. None of them signed off. None of them are identified in the release as parties. And so, they're not part of the settlement. So, if they're not part of the settlement, how is any of the settlement payment going to pay their claims, which are the only ones that could be covered claims? The common element- Represented by the association. The association was there in a representative capacity. But the association doesn't have the power to release their individual claims. Those are personal claims by the unit owners. So, the association can't release claims it doesn't possess. Isn't this getting new to your standing argument that was never raised? Well, no, I don't think it actually goes to standing. I think it goes to the appellees' burden of establishing that on the duty to defend that the actual the settlement that they paid was actually a covered loss. And I don't think they established it from the evidence. Your argument is that a representative, someone who's suing in a representative capacity, can never sign off on claim for the person that they're suing. Is that what you're saying? No, that's not what I'm saying, Your Honor, because I don't think they have that authority to release those claims. I don't think they were pursuing those claims and the individuals who have those claims weren't part of the settlement. So, Mr. Lucas, let me put it to you this way. You're saying that Trapani was your insured, Trapani got sued. In settlement of the lawsuit, Trapani gave $140,000 to the party that sued them. And you're saying, I think, that in order to be bound by your duty to indemnify, Trapani has to show to you that the money they paid to someone was for a covered claim. And you're saying they didn't prove what the covered claim was? They didn't prove that the money that they paid, the primary focus of the money they paid was for a covered claim. We know that there were uncovered claims, these common elements claims, the damage to the common element, the water damage to the building itself. Those are uncovered claims. They paid for those. But they also, in order to- I think it's, well, the duty to indemnify order, the court didn't focus on that. The court focused on, the circuit court, I mean, focused on the fact that the unit owner claims were covered losses and therefore there was a duty to indemnify. The court- And you're saying that they didn't prove that the money went to the unit owner's losses? That's correct. The primary focus of the settlement was the unit owner's losses. That's correct. So you're saying there's an absence of proof. It may have been, but there's no proof. Yeah. Well, I would suggest, Your Honor, the proof is to the contrary, but it's their burden and they failed to carry it. And briefly, Your Honor, the final issue on prejudgment interest, quickly, we raised two points. One is that based on the Mermelstein opinion, the prejudgment interest has to be pled to be awarded. There's no question that it wasn't pled and therefore it shouldn't have been awarded. The appellees cite the Kehoe case and others, which would have a contrary view that the prejudgment interest doesn't need to be pled. And therefore, I think it will be for this court to determine whether Mermelstein or Kehoe should be followed. But also on the prejudgment interest, it's clear under the law that prejudgment interest is only awarded if the sum is liquidated or easily determined by calculation. And here we're focusing on the defense cost portion of the award and the prejudgment interest on the defense costs. That part of the award, the defense costs weren't liquidated and they weren't the subject of easy determination or calculation. Did the parties agree and come up with numbers that they proposed that they presented to the trial court? Absolutely, Your Honor. We and the interest calculations. But I think our point is that we stipulated to that after I went through years of defense bills from Trapani and from National Fire and identified numerous entries that weren't properly defense costs that should be included in the for the Trapani, looked at what I provided to them and agreed to remove them. Council for National Fire at first disputed our right to question the amounts but then stipulated to them. But the point I think and the point that's made in those two standards best crafts cases and one from the first district. Mr. Lucas, you're actually out of time if you want to have any rebuttal at all. Okay, I'm sorry. Justices have more questions right now. You're out of time. Justices, any questions? No. Yeah, you're out of time. Thank you, Your Honor. And I believe, Mr. Silk, you said you would argue first. That's correct, Your Honor. Please. Good afternoon. May it please the court. John Silk on behalf of Trapani Company. The first issue raised today is the duty to defend. And the standard on the duty to defend is very clear. If the facts alleging the complaint fall within or potentially fall within the policy's coverage, the insurer is obligated to defend the insured. And if only one of several theories of recovery alleging the complaint fall within the coverage of the policy, that duty to defend still exists. Now, West Bend has raised an issue that the association did not have standing to bring claims in its representative capacity. And there are several reasons why West Bend's position fails. The first is that their factual basis is incorrect. The 7th and 8th amended complaints do allege that the association is acting in its representative capacity. Paragraph 6 of those complaints, which is incorporated into all of the causes of action, states that the board of directors of the Wing Street of Arlington Heights Condominium Association is the duly elected and qualified board of directors and is a proper party for and on behalf of the unit owners to institute the instant proceedings. Now, uh, West Bend raises one other provision that talks about, uh, I believe it's paragraph 68 that talks about, uh, the allegation that says that the association, uh, is acting in representative capacity as to the common elements. But the fact that there's one allegation that talks about the common elements doesn't negate the other allegations that state that the association is acting in its representative capacity as to the whole case. And West Bend's attempt to parse the complaint and pick out one allegation, uh, is, is not what's contemplated by Illinois law. And in fact, contrary to that, any doubts as to the duty to defend or to be resolved in the insurance favor. So the complaints to be construed in the insurance favor. Okay. Secondly, West Bend's position is internally inconsistent in that on the one hand, they try and distance themselves, uh, as you see in their briefs from calling this an issue about standing. And it's understandable why they do that because standing is an issue that's supposed to be raised as an affirmative defense in the underlying action. So on the one hand, they are talking about, this is not about standing. It's about something more nuanced as the Westfield court stated. But on the other hand, they're citing to a condominium act statute that talks about what type of standing the board has. The Poulet and Kennelly cases they cite were dismissed on the basis of standing. And even in their own brief on page 33, they argue that nowhere in the underlying complaint does the association allege that it has standing. So it is their argument is about standing. And as the Frankenmuth case stated, uh, the only, which was directly on point factually, the only appropriate action for an insurer to take in these circumstances is to defend it's insured and then raise the affirmative defense on behalf of it's insured. Now West relies very heavily on the Westfield versus Van Buren case. And there are numerous material ways in which that case is distinguishable from the present case. Uh, first and perhaps most importantly as raised earlier, uh, in Westfield, there were no allegations by the condominium association that it was representing the individual unit owners. Obviously in our case, we have those allegations, uh, with respect to Trapani construction in the Westfield case, the association sued the contractor and the developer and the insurer in the Westfield case accepted his duty to defend us to the contractors. That would be analogous to, in this case, as if West Bend had accepted the duty to defend as to Japan. So the Westfield case does not, is not persuasive, certainly not as to Japan. Uh, the Westfield case indicated that the allegations therein related only to diminished value and economic harm, which are purely economic losses. That's different from our case where we have distinct allegations, uh, as to personal property damage and corresponding seeking recovery for those damages. Um, the Westfield court found that the underlying complaint did not seek damages for any personal property damage. We, we do allege those damage. The association does allege those damages in our case. Uh, the Westfield case, certainly the language of the Westfield case certainly does not leave one with the impression that it feels an association is always precluded from bringing these types of claims on behalf of the unit owners. In fact, it states while the condominium association might've had the capacity to nowhere in the complaint did it purport to do so. So even the Westfield case recognizes that the association has the right to act in that capacity. Uh, the Westfield case found that the allegations were purely tangential. The allegations as to the personal property damage were purely tangential to the association's claim for damages for repair and remediation of the roof. Um, there's no such, uh, purely tangential argument here, uh, that's been made. Okay. Well, could, could you move on from the duty to defend to the indemnification issue? As I, as I understand it, uh, Mr. Lucas is saying that you didn't establish that the settlement went to a, um, covered claim. Tell us why it did. Yeah. Yes. Your honor. So the primary focus test only applies when you have covered claims and uncovered claims. And I think, uh, even West Bend would concede that we have covered claims here. Uh, and the question is, do we also have uncovered claims? I think Westfield, or I think West Bend would say we have a covered claims as to personal property damage, but other claims are not covered in the cases cited by West Bend on that point are clear that when the, when the court is looking at, uh, covered claims versus uncovered claims, they don't pick out certain allegations of the complaints and try and parse through, uh, whether a certain allegation might be covered versus not being covered. Instead, what they do is they, they look at the causes of action. Those are the, those are the claims. And in the Santa's best case, um, the court noted that the cover claim was a trade dress claim and the non-covered claims were trademark and false advertising. Uh, in the federal insurance company case, uh, there was a covered consumer fraud claim and a non-covered warranty claim. Uh, in the selective insurance company case, there was a covered negligence claim, uh, and a non-covered premises liability claim. And here was on disputed is against Trapani. We have two claims, a two breach of implied warranty claims, and those are clearly covered claims. Those claims are referenced in the settlement agreement as being claims for which are being released in exchange for the payment. So I don't have claims and those claims are for what they say, what they were claimed for what the, the, you mean the breach of implied warranty in the settlement? Did they say we're taking $50 in settlement of this claim? It being Mrs. Smith's broken lamps. Okay. And just say, we're giving you $50 in settlement of all claims. No, the settlement agreement did not allocate, uh, that, and I, and I don't think that's a requirement that all settlement agreements, uh, allocate what funds are for what, uh, what did you do to establish to this average to the satisfaction of either the court or to the insurance company that the settlement was for a covered claim? How did you prove that? Well, you know, the, I guess the trial court didn't raise that as an issue. Uh, so as far as on the summary judgment briefings, it wasn't raised as an issue of proof. Uh, but you know, again, the, the covered, you know, there's two claims against Trapani and Trapani's position is those are both covered claims. They're both referenced in the settlement agreement. The So I just don't see where the, where there's been any, you know, indication of an uncovered claim for this primary focus test to arise, because to get to the point where you need to start proving or showing, uh, what the primary focus is, you have to first get to the point that the primary to happen, there has to be a showing that there's an actually an uncovered claim. And I don't think West Bend has shown there's an uncovered claim. I haven't seen any indication that there's an uncovered claim here. There's two claims and they're both covered. And while you're at it, do you want to comment on the, um, situation where the insurance company does not, uh, defend in a case where there may not be liability, but there could still be a duty to defend and where the insurance company doesn't defend what impact does that have on the duty to indemnify? So if I, if I understand your question and came to my mind in hearing Mr. Lucas, so when they chose not to defend as we believe they should have, um, you know, then the case proceeds to, to a settlement and now we're seeking, uh, indemnification. It appears that what Mr. Lucas is saying is, and obviously if they, if they had accepted their duty to defend, they would have been involved in that settlement, uh, and would have had a say in some of these issues. But it appears that Mr. Lucas's argument as to why there's an uncovered claim is the same argument he's making on the duty to defend that the association can't release claims of individual unit owners and individual unit owners weren't signatories to the settlement agreement. And, and, and obviously associations represent acting a representative capacity for unit owners all the time. Uh, and parents do for children, what's that parents do for children or disabled adults, right? So, you know, you're not going to have 71 unit owners signing on to a settlement agreement. So there's an, there's an agreement between the unit owners and the association that the association can act in a representative capacity, uh, for things like this type of a complaint, this type of a settlement. And so no, the settlement agreement doesn't break down $50 for this lamp, a hundred dollars over here. Uh, but again, to get to the primary focus analysis, there has to be some showing of an uncovered claim and all West Bend has done to try and show an uncovered claim is say, listen, the association can't act in a representative capacity. They're making the same argument that they made on the duty to defend. Okay. Is that it, Mr. Silk? Did you have anything further? I have nothing further. I can turn over to Mr. Turner. Sure. Mr. Turner, please. Good afternoon, your honors, uh, Scott Turner for national fire insurance company of Hartford. Um, just want to touch a little bit on the indemnity issue from the perspective of national fire. Um, and then I'll talk a little bit about the prejudgment interests that were awarded for both parties. Um, you know, national fire participated in the defense, um, and the it entered the settlement, uh, you know, West Bend didn't pick up the defense. We did, we entered the settlement, uh, negotiations. We reached a settlement and the perspective was on the complaints and what the complaints were alleging in terms of what the damages were, the expectation, uh, based on the engineer's report, which was cited before the references in her opinion, um, which delineated, you know, you know, many different, uh, damaged items of personal property. And so national fire and entering that settlement is doing so armed with the same coverage of defenses that West Bend would have, um, that it doesn't cover, uh, the work damage to the work itself, faulty workmanship. It covers damage to other property. And so national fire reached the settlement for $45,000. And that was a product of negotiation settlement. And those coverage issues that, that, you know, the coverage was limited, uh, was part of the negotiation and that's part of the result. And so I think that puts a national fire, maybe it's a slightly different situation, something more nuanced situation, um, and sort of to the effect that, you know, just presumptively, uh, national fire paid for coverage, covered damages because it paid under the policy paid as an insurance company. Um, there was handling the defense and then it was, you know, had to handle the, uh, the settlement. Um, and the settlement of course, ended the case and did the defense obligation. And really all this redounds to the benefit now, uh, of West Bend, um, touching on the pre-judgment interest issue. Um, I think that the case law is overwhelmingly, uh, favors our position that a request for prejudged pre-judgment interest is read into a complaint, uh, by virtue of the interest act, uh, lots of cases that we cite in our, our appellees brief, um, state that proposition, uh, the cases that Mermelstein and Geiser, uh, are just, you know, outliers, uh, that really don't seem to state, uh, the majority view of the law for Illinois. Um, in terms of the computation, uh, you know, we, we did of course, reach a stipulation, uh, which for which the judge was very thankful, but you know, the, the, the, even that reaching that stipulation was not a difficult process. Uh, it was cumbersome because there were, you know, four years of invoices, four years of defense invoices, uh, for two different parts, sets of parties that had to be gone through. And, but really what we're just doing is telling them up because each invoice was actually paid. These are, are, you know, finite, uh, you know, concrete, uh, liquidated amounts that, that National Fire paid, the Trapani Construction paid, and it's a simple matter of adding them up. And then we had the, the issue with, uh, you know, negotiating the cuts to certain items, uh, which we did. And, and really that's just invoice by invoice. There may be one entry, maybe no entries that need to be, uh, redacted, uh, cut out of the total amount, um, being sought. So we presented this, this stipulation to the court, the court heard oral argument on the issue and she exercised her discretion in awarding prejudge, prejudgment interest on defense and the indemnity, the indemnity amount was not really in dispute, uh, provided we're entitled to prejudgment interest, which we believe we are. Thank you very much. Thank you, Mr. Chairman. Any questions, justices? No. Okay. Mr. Lucas. Quickly, quickly, your honor, um, going, going backwards from the duty to indemnify, uh, National Fire does not provide one case that supports an argument that because it paid, it presumptively paid a covered claim. Um, and there are no cases. I mean, what National Fire is, is in essence, a subrogate. It steps into the shoes of it's insured and only has the claims that it's insured has. And if the insured couldn't establish the duty to indemnify the National Fire Committee, um, going to Trupani Constructions argument, the council said that the, the primary focus cases focus on the, uh, the nature of the counts of the complaint, not on the allegations or the evidence. And that's clearly not true. And I just suggest that the court look at Commonwealth Edison versus National Union and Rosalynn Franklin University versus Lexington, both first district appellate court opinions, both, both opinions dealing with, um, the, uh, duty to indemnify in the primary focus test, both don't focus on the label of the count of the complaint, both focus on the allegations and the other evidence in the case to determine whether the primary focus of the settlement was a covered loss. And the uncovered loss here, there's no dispute. The uncovered loss is the common elements damage that all courts would agree. Um, when you look at the duty to defend and the duty to indemnify, um, the general contractor and Trupani, uh, Trupani construction and the developer, the common elements are the project itself. And there was no coverage, uh, under any case law for damage to the project itself, the entire building, the common elements are their project. That's the uncovered claim. And our argument is they failed to establish that a part of the settlement. And in fact, the primary focus of the settlement was a covered claim. In this case, their argument of, um, unit owner, personal property damage claims, they failed to show that, that those claims were a primary focus of the settlement. Therefore the duty to indemnify, uh, did not exist. And finally, on the duty to defend, I go back to the complaint counsel for Trupani, uh, focused on certain allegations in the complaint. And these are quoted at page seven and eight of our brief and they're, they're quoted, um, in the, um, underlying court's opinion. Um, but paragraph four, the condo specifically sites, uh, 7 6 5 ILCS 6 0 5 9.1 crimes be small, uh, close prime, which says the board of managers has standing and capacity in a representative capacity in relation to matters involving common elements of more than one unit on behalf of unit owners. And then when you look at paragraph six, when the, the association alleges that it is the proper party to bring, uh, the suit on behalf of unit owners, it refers back to the act and the act is the condo app, which states that the board has limited authority. Um, and that authority does not extend to unit owner individual property damage claims. And then when you go to the next page of our brief, um, page eight, we, we quote, um, paragraph 62 and 67, which are implied allegations against village green and Tapani construction and page nine, similar allegations against, uh, Tapani construction, um, paragraph 68, paragraph 73, those paragraphs, and they're repeated throughout the complaint repeatedly makes a distinction between the board pursuing common elements claims and the individual unit owner claims. Um, so the complaint does not allege that the board is pursuing the individual claims in a representative capacity. And therefore, for the reasons stated in Westfield, um, we believe that the duty to defend, uh, was not, uh, implicated because, uh, those unit owner claims should not have been considered than the only other allegations with a common element damage allegations, which do not trigger duty to defend. And therefore, for those reasons, we asked the court, uh, to reverse, uh, the judgment of the, uh, circuit court and enter, uh, judgment for West Bend on the duty to defend and duty to indemnify. Thank you. Okay. Thank you to all of you. Uh, excellent job. Excellent. All arguments. We've enjoyed this. So we thank you and have a good day, everybody.